NIMMONS, Judge.
Appellants appeal from a final judgment of forfeiture forfeiting $37,388.00 to the *1378 State of Florida. The case was presented to the trial court on a stipulated statement of facts which we summarize herein.
In March of 1988, two state troopers observed a 1987 Chevrolet Blazer and a 1987 Harley Davidson motorcycle traveling southbound on 1-75 through Alachua County at 72 miles per hour in a 65 m.p.h. zone. One of the troopers stopped the driver of the motorcycle and the other stopped the driver of the Blazer. The motorcycle driver, Foderetti, appeared nervous and hesitant when asked to produce his drivers license. He indicated he was speeding in order to keep up with his friend, who was driving the Blazer, and that their destination was West Palm Beach. The trooper requested a computer search on his license.
At the same time, the trooper who stopped the Blazer noticed the appellant’s wife, Janet Dioneff, attempting to conceal something in the back of the vehicle while he was examining Craig Dioneffs license.[1] The trooper asked Mrs. Dioneff to leave the vehicle and, while backup assistance stayed with the Dioneffs, the trooper looked in the vehicle and saw a marijuana cigarette in plain view on the front seat. Foderetti was asked to remove his jackets to ascertain whether they contained weapons. Foderetti did so, was handcuffed and then patted down for weapons. Mr. Dio-neff was then handcuffed and patted down for weapons. One thousand three hundred and eighty-eight dollars ($1,388.00) in currency was discovered on him during the pat down. A small vial containing traces of cocaine was also subsequently removed from Mr. Dioneffs pants pocket. A metal cigarette case with two and one-half marijuana cigarettes was found in one of Foder-etti’s jackets. Foderetti and the Dioneffs were read their Miranda rights.
A drug detection dog alerted the officers to a map containing marijuana and seeds in the driver’s area of the Blazer. Seeds and more marijuana were turned up during a search of the vehicle, but not enough to constitute a felony. However, the vial containing traces of cocaine did constitute felony contraband. Dioneff subsequently signed a sworn statement admitting that the cocaine was his.
The search of the Blazer also turned up a suitcase containing currency in the following amounts: 64 — $100 bills, 97 — $50 bills, 1201 — $20 bills, 74 — $10 bills, 10 — $5 bills, totalling $36,060.00. The Dioneffs claim they had saved the money over a number of years and were planning on buying real estate in Florida. No illicit drugs were found in the suitcase that contained the money.
A .38 caliber automatic pistol with a separate loaded clip and a container of valium were discovered in the motorcycle’s saddle bags. The motorcycle was eventually released back to Foderetti.
A final judgment of forfeiture was entered against the Dioneffs, and the currency found on Mr. Dioneff as well as the currency found in the Blazer was forfeited.
The appellee initiated this forfeiture action under the provisions of Sections 932.-701-932.704, Florida Statutes (1987), the “Florida Contraband Forfeiture Act” (hereinafter the “Act”). The contraband article which the state sought to subject to forfeiture is the U.S. currency. “Contraband article” is defined in Section 932.701(2)(a):
(2) As used in ss. 932.701-932.704, “contraband article” means:
(a) Any controlled substance as defined in chapter 893 or any substance, device, paraphernalia, or currency or other means of exchange which has been, is being, or is intended to be used in violation of any provision of chapter 893. (e.s.)
[[Image here]]
(e) Any personal property, including, but not limited to, any item, object, tool, substance, device, weapon, machine, vehicle of any kind, money, securities, or currency, which has been or is actually employed as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony, (e.s.)
*1379 Section 932.702 makes it unlawful to transport, conceal or possess any contraband article. Section 932.703 then deals with the seizure and forfeiture of certain articles:
(1)Any ... motor vehicle ... and other personal property which has been or is being used in violation of any provision of s. 932.702 ... as well as any contraband article involved in the violation, may be seized and shall be forfeited.... In any incident in which possession of any contraband article defined in s. 932.-701(2)(a)-(d) constitutes a felony, the vessel, motor vehicle, aircraft, or personal property in or on which such contraband article is located at the time of seizure shall be contraband subject to forfeiture. It shall be presumed in the manner provided in s. 90.302(2) that the vessel, motor vehicle, aircraft, or personal property in or on which such contraband article is located at the time of seizure is being used or was intended to be used in a manner to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of a contraband article defined in s. 932.701(2)(a)-(d).
The presumption, which is available to the state under the provisions of Section 932.703(1), is clearly not applicable in these circumstances. The only way in which forfeiture of the currency can be justified is for the state to prove that the currency in question had been, was being, or was intended to be used in violation of Chapter 893 (Section 932.701(2)(a)) or that the currency had been or was actually employed as an instrumentality in the commission of any felony (Section 932.701(2)(e)). The evidence in this case fails to establish the requisite connection between the currency and any offense.
The forfeiture law is supplemental to the criminal procedure law, is penal in nature, and must be strictly construed in favor of those against whom the penalty is to be imposed. Hotel and Restaurant Commission v. Sunny Seas No. One, 104 So.2d 570 (Fla.1958); General Motors Acceptance Corp. v. State, 152 Fla. 297, 11 So.2d 482 (1943).
In State v. Crenshaw, 548 So.2d 223 (Fla.1989), Section 932.703(1) was construed to mean:
[Possessing drugs, even solely for personal use, subjects individuals not only to criminal penalties but also to forfeiture of the vehicle, boat, or aircraft in which the drugs are found.
Id. at 226. The Supreme Court rejected this court’s view in Crenshaw v. State, 521 So.2d 138 (Fla. 1st DCA 1988), that a nexus or relationship between the concealment or possession of contraband drugs and the use of the vehicle was indispensable to entitlement to a forfeiture of the vehicle. The Supreme Court held that forfeiture of the vehicle was justified where the driver of the vehicle was found to have on his person a vial containing less than one gram of cocaine.
However, a close reading of Crenshaw and the Act leads to the conclusion that the state cannot seize the money under this authority. Section 932.703(1) provides in pertinent part:
In any incident in which possession of any contraband article defined in s. 932.-701(2)(a)-(d) constitutes a felony, the vessel, motor vehicle, ... personal property, ... in or on which such contraband article is located at the time of seizure shall be contraband subject to forfeiture.
If the state had instituted forfeiture proceedings on the appellants’ vehicle, it is clear under the Act and Crenshaw that they would have been entitled to such forfeiture. It is also clear that had the suitcase containing the money also contained cocaine or a felony amount of marijuana, the money could have been subjected to forfeiture. However, the cocaine in Dio-neff’s pocket was not found in or on the currency or the suitcase. Thus, the money cannot be forfeited based on Crenshaw and the Act.
Nevertheless, appellee asserts that the facts support a reasonable belief by the officers that the money was furnished or intended to be furnished in exchange for drugs and that forfeiture can therefore be *1380 justified under Lobo v. Metro-Dade Police Dept., 505 So.2d 621 (Fla. 3rd DCA 1987).
In Lobo, the Third District, in affirming a forfeiture judgment, said that “the money is itself strong evidence that it was involved in a drug transaction.” There, the total amount was $142,795. The court found significant the fact that the money was in denominations of ones, fives, tens, twenties, fifties, and hundreds, and the fact that it was carried in a duffle bag and packaged in a manner “unique to drug dealers.” Although no drugs were found in the car or duffle bag, the court pointed out that a trained, experienced narcotics dog alerted on the duffle bag containing the money. These factors, together with conflicting statements by Lobo and her passenger, persuaded the Lobo court that “probable cause for forfeiture” had been established by the state such that the burden shifted to Lobo “to rebut the probable cause showing.” The court held that Lobo failed to meet her burden.
Assuming, without deciding, that we were to agree with the Lobo court’s legal analysis and conclusions, the facts in the instant case are materially distinguishable. There is simply a dearth of evidence connecting the money with any past or anticipated drug transaction. The dog did not alert on the suitcase containing the money. There was no evidence that the bulk of the currency, which was found in the suitcase, was stacked or packaged in a manner unique to drug dealers. Nor was there any demonstrable connection between the smaller sum — the $1,388 — and the vial with traces of cocaine found in Mr. Dioneff’s pants pocket. Neither can it be said that Mrs. Dioneff’s apparent effort to conceal something in the back of the Blazer serves to supply the missing elements in the state’s forfeiture case.
Accordingly, the judgment of forfeiture is REVERSED.
ERVIN and ALLEN, JJ., concur.

. Appellants, Craig and Janet Dioneff, are husband and wife.