727 So.2d 199 (1998)
DEPARTMENT OF LEGAL AFFAIRS, Petitioner,
v.
BRADENTON GROUP, INC., et al., Respondents.
Bradenton Group, Inc., et al., Petitioners,
v.
Department of Legal Affairs, Respondent.
Nos. 91712, 92084.
Supreme Court of Florida.
September 24, 1998.
Rehearing Denied March 3, 1999.
Robert A. Butterworth, Attorney General, and Jacqueline H. Dowd, Assistant Attorney General, Orlando, for Petitioner/Respondent.
Thomas F. Egan, Orlando, and Steven G. Mason, Orlando, for Respondents/Petitioners.
Andrew L. Siegel, Plantation, for Amicus Curiae Sunshine State Bingo Association, Inc.
Douglas L. Stowell of Stowell, Anton & Kraemer, Tallahassee, for Amicus Curiae Moose International, Inc.
SHAW, Justice.
We have for review Bradenton Group, Inc. v. Department of Legal Affairs, 701 So.2d 1170 (Fla. 5th DCA 1997), wherein the district court certified the following question:
WHETHER A BINGO GAME, CONDUCTED BY AN ORGANIZATION NOT AUTHORIZED UNDER SECTION 849.0931, FLORIDA STATUTES, OR CONDUCTED BY AN AUTHORIZED ORGANIZATION IN VIOLATION OF SECTIONS 849.0931(5)-(12), FLORIDA STATUTES, CONSTITUTES A "LOTTERY" AS THAT TERM IS USED IN SECTION 849.09, FLORIDA STATUTES, AND, THUS, IS RACKETEERING ACTIVITY WHICH IS SUBJECT TO FLORIDA RICO.
Id. at 1179. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the negative as explained below.
Bradenton Group, Inc., and the other respondents/petitioners (Bradenton), are for-profit Florida corporations which own or operate properties throughout central Florida at which bingo is or was conducted. The State filed a civil lawsuit against Bradenton *200 alleging the following violations of the bingo statute[1]:
a. The purported charities on whose behalf the games were conducted did not qualify as "charitable, nonprofit or veterans organizations" as defined in Section 849.0931(1)(c), Florida Statutes.
b. Jackpots were awarded which exceeded $250, in violation of Section 849.0931(5), Florida Statutes.
c. Bingo games were conducted on behalf of a particular purported charity on more than two days per week, in violation of Section 849.0931(6), Florida Statutes.
d. More than three jackpots were awarded on one day of play, in violation of Section 849.0931(7), Florida Statutes.
e. Persons involved in the conduct of bingo games were not bona fide members of the purported charity sponsoring the games, in violation of Section [8]49.0931(8), Florida Statutes.
f. Some of the purported charities involved in the conduct of bingo games were not located in the county, or within a 15-mile radius of where the bingo games were conducted, in violation of Section 849.0931(9), Florida Statutes.
g. Bingo games were not held on premises where authorized bingo games are permitted, in violation of Section 849.0931(11), Florida Statutes.
h. The bingo games were not conducted in accordance with the rules set forth in Section [8]49.0931(12), Florida Statutes; and
i. The proceeds of the bingo games were not returned to the players in the form of prizes, in violation of Section 849.0931(3), Florida Statutes.
Bradenton Group, 701 So.2d at 1174 (emphasis added). The State claimed that because of the above violations Bradenton was not authorized to conduct bingo and its operations were therefore illegal lotteries[2] and subject to civil forfeiture[3] under the Florida RICO Act.[4] The State obtained an ex parte injunction preventing Bradenton from conducting bingo games and using its property. Bradenton filed motions to dissolve the injunction and to require the State to post a bond to compensate Bradenton for damages resulting from the injunction. The trial court denied the motion to dissolve but required the State to post a $1.4 million bond. Bradenton appealed the order denying the motion to dissolve and the State appealed the order requiring it to post bond.
The district court affirmed both orders, ruling that when an organization that is authorized to conduct bingo (e.g., charitable, nonprofit, veterans, condominium and mobile home owners' associations, etc.) violates the bingo statute, it is subject to the penalty provision of that statute, whereas when an organization that is unauthorized to conduct bingo (e.g., for-profit, noncharitable organizations) violates the bingo statute, it is subject to the penalty provisions of the lottery and RICO statutes. The district court explained:
[I]f an organization not meeting the criteria for eligibility to conduct bingo earned money for itself by conducting a bingo game, that organization would not qualify under the statute for the right to conduct bingo and would lack the immunities to *201 which it would have been entitled had it met the necessary criteria. This is the defendants' status, according to the complaint and affidavit. In short, under our statutory scheme, they who are authorized to conduct bingo violate the bingo statute; they who are not authorized to conduct bingo do not violate the provisions of the bingo statute, they violate the applicable gambling laws. Reading section 849.0931 in pari materia with the multitude of gambling offenses proscribed throughout chapter 849, it is reasonable to conclude that the legislature intended the bingo requirements to govern the performance of authorized bingo; it is not, however, the statutory vehicle for punishing unauthorized bingo operators.
Bradenton Group, 701 So.2d at 1176 (citation and footnote omitted). The district court certified the above question and both parties petitioned for review.
Consistent with the district court opinion, the State argues that Bradenton is an "unauthorized" organization whose violations of the bingo statute constitute illegal lotteries and subject Bradenton to punishment (including forfeiture) under the lottery and RICO statutes. We disagree based on the plain language of the statutes.
Section 849.0931 defines organizations that are authorized to conduct bingo games in Florida:
(2)(a) None of the provisions of this chapter shall be construed to prohibit or prevent charitable, nonprofit, or veterans' organizations engaged in charitable, civic, community, benevolent, religious, or scholastic works or other similar endeavors, which organizations have been in existence and active for a period of 3 years or more, from conducting bingo games, provided the entire proceeds derived from the conduct of such games, less actual business expenses for articles designed for and essential to the operation, conduct, and playing of bingo, are donated by such organizations to the endeavors mentioned above. In no case may the net proceeds from the conduct of such games be used for any other purpose whatsoever. The proceeds derived from the conduct of bingo games shall not be considered solicitation of public donations.
. . . .
(3) If an organization is not engaged in efforts of the type set out above, its right to conduct bingo games hereunder is conditioned upon the return of all the proceeds from such games to the players in the form of prizes. If at the conclusion of play on any day during which a bingo game is allowed to be played under this section there remain proceeds which have not been paid out as prizes, the organization conducting the game shall at the next scheduled day of play conduct bingo games without any charge to the players and shall continue to do so until the proceeds carried over from the previous days played have been exhausted. This provision in no way extends the limitation on the number of prize or jackpot games allowed in one day as provided in subsection (5).
(4) The right of a condominium association, a mobile home owners' association, or a group of residents of a mobile home park as defined in chapter 723 to conduct bingo is conditioned upon the return of the net proceeds from such games to players in the form of prizes after having deducted the actual business expenses for such games for articles designed for and essential to the operation, conduct, and playing of bingo. Any net proceeds remaining after paying prizes may be donated by the association to a charitable, nonprofit, or veterans' organization which is exempt from federal income tax under the provisions of s. 501(c) of the Internal Revenue Code to be used in such recipient organization's charitable, civic, community, benevolent, religious, or scholastic works or similar activities or, in the alternative, such remaining proceeds shall be used as specified in subsection (3).
§ 849.0931(2)(a),(3),(4), Fla. Stat. (1993). Other portions of this statute, i.e., subsections (5) to (12), include a list of technical rules governing bingo operation. See § 849.0931(5)-(12), Fla. Stat. (1993) (specifying how often bingo games may be conducted, the maximum value of each jackpot, how many jackpots permitted per session, what *202 must happen when a player calls out "bingo!", etc.).
Subsection 849.0931(13) of the bingo statute sets forth criminal penalties for bingo violations and expressly states that the penalties apply to any organization violating any of the statute's provisions:
(13) Any organization or other person who willfully and knowingly violates any provision of this section is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. For a second or subsequent offense, the organization or other person is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 849.0931(13), Fla. Stat. (1993)(emphasis added). The plain language of the statute draws no distinction between "authorized" and "unauthorized" organizations. This artificial distinction is entirely judge-made.
Further, the lottery statute expressly states that it does not apply to bingo:
(3) Any person who is convicted of violating any of the provisions of paragraph (e), paragraph (f), paragraph (g), paragraph (i), or paragraph (k) of subsection (1) is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. Any person who, having been convicted of violating any provision thereof, thereafter violates any provision thereof is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The provisions of this section do not apply to bingo as provided for in s. 849.0931.

§ 849.09(3), Fla. Stat. (1993)(emphasis added).
Finally, the RICO statute specifically lists the provisions of the gambling chapter that it punishes and does not include section 849.0931, the bingo statute:
895.02 Definitions.As used in ss. 895.01-895.08, the term:
(1) "Racketeering activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:
(a) Any crime which is chargeable by indictment or information under the following provisions of the Florida Statutes:
. . . .
32. Section 849.09, s. 849.14, s. 849.15, s. 849.23, or s. 849.25, relating to gambling.

§ 895.02(1)(a)(32), Fla. Stat. (1995)(emphasis added).
In sum, none of the above statutes draws a distinction between or even mentions "authorized" and "unauthorized" bingo organizations. Without a clearer signal from the legislature, we are unwilling to create such a distinction and transform routine bingo offenses into lottery and RICO violations. Accordingly, we answer the certified question in the negative and hold that under the present statutory scheme violations of the bingo statute are not punishable under the lottery or RICO statutes. We quash Bradenton Group on this issue.
The State also claims that the trial court abused its discretion by requiring the State to post an injunction bond. We disagree and approve the district court's decision on this issue:
[T]he very broad injunction the state requested and receivedwill severely damage the defendants if its entry was improper.... As the state thrives under the broad grant of authority to the circuit court in subsection (5),[[5]] so must it suffer under it.
Bradenton Group, 701 So.2d at 1180.
It is so ordered.
*203 HARDING, C.J., and KOGAN, ANSTEAD and PARIENTE, JJ., concur.
WELLS, J., concurs with an opinion.
OVERTON, J., dissents with an opinion.
WELLS, Justice, concurring.
I concur with the result reached by the majority, and I reach the result by way of the following reasoning. My reading of section 849.0931, Florida Statutes (1993), in subsections (2)(a), (3), and (4) is that the statute covers all organizations and specifies statutory conditions and limitations applying to separate types of organizations that operate bingo games. Section 849.0931 specifies conditions for authorized bingo operations under subsection (2)(a) for a charitable, nonprofit, or veterans' organization; under subsection (3) for "an organization ... not engaged in efforts of the type set out [in (2)(a)]"; and under subsection (4) for a condominium or mobile home park organization. The second category, subsection (3), could potentially include any organization. Thus, no type of organization is unauthorized to conduct bingo games that conform to the conditions set forth in the bingo statute.
Section 849.0931(13), the bingo penalty provision, expressly refers to "[a]ny organization or other person who willfully and knowingly violates any provision of this section." In view of the other provisions of the statute which are reasonably read to cover all organizations, this penalty provision is reasonably read to provide penalties for every organization engaged in bingo that willfully violates any provision of section 849.0931. It then follows that, since every organization that operates bingo games is covered by section 849.0931, then every organization operating bingo games is excluded from section 849.09, Florida Statutes (1993), the lottery statute, by the express language of section 849.09(3), which states: "The provisions of this section do not apply to bingo as provided for in s. 849.0931." Therefore, the sum of my reasoning is that the lottery statute does not cover any organizations that operate bingo games. Furthermore, as the majority states, the absence of section 849.0931, the bingo statute, from a listing of the statutes describing the scope of section 895.02, Florida Statutes (1995), the RICO statute, indicates that the RICO statute does not cover any organization that operates bingo games.
OVERTON, Justice, dissenting.
I dissent.
In my view, the majority has misconstrued the purpose of the statutory scheme enacted by the legislature relating to bingo. This Court has previously held that bingo is gambling and is a lottery. Greater Loretta Improvement Ass'n v. State ex rel. Boone, 234 So.2d 665, 669 (Fla.1970). In enacting section 849.0931, the legislature has permitted certain organizations to conduct bingo games free from the gambling proscriptions of chapter 849. Id. ("Bingo or Guest games do not violate [chapter 849, `Gambling,'] if played within the restrictions imposed by the Legislature."). Qualifying organizations are "authorized" to conduct bingo games under the plain language of subsections 849.0931(2)(a), (3), and (4). Logically, if an organization does not meet the requirements of these subsections, the organization is "unauthorized" to conduct bingo. Authorized organizations must abide by the technical rules governing the operation of bingo games under subsections 849.0931(5) through (12) and are subject to the sanctions under subsection 849.0931(13) for violating the technical rules. An organization that conducts bingo without authorization has not violated the technical rules regarding the operation of bingo, but has engaged in illegal gambling. These unauthorized organizations are subject to the full range of penalties under chapter 849. See Madar v. State, 376 So.2d 446, 448 (Fla. 4th DCA 1979) ("The status of the defendant as being within the class of `worthy organizations' is a threshold question for the application of the Section [849.0931] exception. An individual who is not such a `worthy organization' may not have the benefit of the bingo statutory exception.").
To me, the statutory scheme to conduct bingo under section 849.0931 is analogous to the scheme under chapter 550, Florida Statutes (1997), regarding pari-mutuel wagering, such as betting on horseracing. A permit to conduct pari-mutuel operations may be *204 granted to qualifying organizations under section 550.054. Organizations that are authorized to conduct pari-mutuel operations are subject to various technical rules of operation under the pari-mutuel wagering statute. The Division of Pari-mutuel Wagering of the Department of Business and Professional Regulation is empowered under subsection 550.0251(10) to impose penalties upon authorized organizations for violations of these technical rules. Persons conducting unauthorized pari-mutuel operations, however, are subject to criminal and RICO penalties. Therefore, as does the bingo statute, the pari-mutuel wagering statute authorizes organizations to conduct gambling activities, defines the technical rules governing the gambling activities, and provides sanctions for rule violations committed by the authorized organizations. Persons who are not authorized to conduct pari-mutuel activities or bingo are subject to criminal and RICO penalties.
The majority has said, in essence, that bingo is not a lottery, and, consequently, that no person or entity can be charged with a gambling offense for operating a bingo game. In fact, the majority opinion may be used to allow anyone to conduct bingo without regard to the regulations contained in chapter 849. I disagree with the majority's opinion, and the district court of appeal's opinion should be approved in full.
NOTES
[1] § 849.0931, Fla. Stat. (1993) (bingo statute).
[2] The lottery statute, section 849.09, Florida Statutes (1993), states in pertinent part:

(1) It is unlawful for any person in this state to:
(a) Set up, promote, or conduct any lottery for money or for anything of value;
. . . .
(d) Aid or assist in the setting up, promoting, or conducting of any lottery or lottery drawing, whether by writing, printing, or in any other manner whatsoever, or be interested in or connected in any way with any lottery or lottery drawing....
[3] The state sought forfeiture of real property, money, and personal property derived from proceeds of alleged criminal activities pursuant to section 895.05 of the RICO statute, which states in pertinent part:

(2)(a) All property, real or personal, including money, used in the course of, intended for use in the course of, derived from, or realized through conduct in violation of a provision of ss. 895.01-895.05 is subject to civil forfeiture to the state.
§ 895.05(2)(a), Fla. Stat. (1995).
[4] § 895.01-.06, Fla. Stat. (1995) (Florida RICO Act)(defining racketeering activity to include violations of the lottery statute).
[5] Subsection 895.05(5) states:

The Department of Legal Affairs, any state attorney, or any state agency having jurisdiction over conduct in violation of a provision of this act may institute civil proceedings under this section. In any action brought under this section, the circuit court shall proceed as soon as practicable to the hearing and determination. Pending final determination, the circuit court may at any time enter such injunctions, prohibitions, or restraining orders, or take such actions, including the acceptance of satisfactory performance bonds, as the court may deem proper.
§ 895.05(5), Fla. Stat. (1995).