794 So.2d 744 (2001)
3B TV INC., Appellant/Cross-Appellee,
v.
STATE of Florida, OFFICE OF THE ATTORNEY GENERAL, Appellee/Cross-Appellant.
No. 1D99-1760.
District Court of Appeal of Florida, First District.
September 24, 2001.
*745 Barry Richard of Greenberg Traurig, P.A., Tallahassee, and Brandon F. White and Kenneth S. Leonetti of Foley, Hoag & Eliot, LLP, Boston, MA, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General and Tina Furlow and Mark S. Fistos, Assistant Attorneys General, Tallahassee, for Appellee/Cross-Appellant.
*746 VAN NORTWICK, J.
3B TV, Inc. appeals, and the State of Florida cross-appeals, a final judgment entered following a jury verdict which found that in transmitting via satellite its "Basil Basset Bingo" promotional game, 3B TV had committed an unfair act or practice under section 501.212, Florida Statutes (1997), the Florida Deceptive and Unfair Trade Practices Act (DUTPA). We agree with the state's argument on cross-appeal that, under the Supreme Court's recent decision in Department of Legal Affairs v. Bradenton Group, Inc., 727 So.2d 199 (Fla. 1998) (Bradenton II), the trial court erred in granting partial summary judgment in favor of 3B TV on the count alleging a violation of the bingo statute, section 849.0931, Florida Statutes. As a result, for the reasons that follow, we reverse the judgment on appeal in its entirety and remand for further proceedings.

Factual and Procedural Background
3B TV is a Delaware corporation conducting business in Florida through satellite television transmissions. Among its transmissions, 3B TV transmitted a game called "Basil Basset Bingo" in an effort to promote other satellite programming. Through the Office of the Attorney General of Florida, the State of Florida filed a complaint seeking temporary and permanent injunctive relief and damages under DUTPA. The State alleged that the transmission of Basil Basset Bingo constituted a lottery drawing for money contrary to section 849.09, an unlawful game promotion contrary to section 849.094, and the operation of a bingo game contrary to section 849.0931, Florida Statutes. The State alleged further that, in transmitting Basil Basset Bingo, 3B TV committed acts and practices that are unfair in violation of DUTPA. Each party moved for summary judgment. Relevant to this appeal, the trial court granted 3B TV's motion for a partial summary judgment, ruling in reliance on the decision of the Fifth District in Bradenton Group, Inc. v. Department of Legal Affairs, 701 So.2d 1170 (Fla. 5th DCA 1997) (Bradenton I), that section 849.0931 does not apply to 3B TV's broadcasts.
The cause proceeded to a jury trial. The jury returned an interrogatory verdict finding that: (1) 3B TV was engaged in selling consumer products and services; (2) the game was conducted in connection with the sale of products and services; (3) 3B TV did not require an entry fee as a condition to play the game, and (4) 3B TV committed an unfair act or practice. The jury assessed a total penalty in the amount of $772,500, which consisted of a daily penalty of $1,500 as set by the jury, multiplied by 515, the number of days the broadcasts were aired in Florida.
3B TV seeks reversal of the final judgment entered on the verdict arguing, in part, that its game was a valid game promotion and hence cannot constitute an unfair act or practice, section 501.212(1). In its cross-appeal, the State challenges the trial court's grant of summary judgment as to the count alleging a violation of the bingo statute.

Application of the Bingo Statute
In count II of its complaint, the State alleged that 3B TV violated the bingo statute, section 849.0931, Florida Statutes (1997), when it broadcast and operated Basil Basset Bingo in Florida. 3B TV moved for partial summary judgment on count II, arguing that the bingo statute applied only to entities authorized to conduct bingo in Florida under the statute, that 3B TV was not an organization authorized to conduct bingo under the statute, and, thus, that 3B TV cannot fall within the purview of the statute. 3B TV relied upon Bradenton I, 701 So.2d 1170.
*747 The trial court agreed and ruled that the bingo statute
sets forth an exception to the general ban on bingo games found elsewhere and sets forth the guidelines and criteria necessary for meeting that exception. Since [3B TV] was not one of the entities authorized under the statute to conduct bingo games, it does not fall within the purview of that statute.
At the time the summary judgment was entered, the trial court was correct in its reliance upon Bradenton I. After the trial was concluded in the instant case, however, the Supreme Court of Florida quashed the Fifth District's decision in Bradenton I. See Bradenton II, 727 So.2d 199. We agree with the State's argument on cross-appeal that Bradenton II requires reversal.
In Bradenton I, the district court considered the question of whether the violation of the bingo statute could be considered racketeering activity under RICO. In analyzing the question, the Fifth District noted that the bingo statute extends the right to conduct bingo games to organizations not engaged in charitable or similar endeavors, so long as the proceeds from the games are returned to the players as prizes. 701 So.2d at 1175. The Bradenton I court noted that under the plain language of the statute, only organizations meeting the criteria of either subsection (2)(a), (3) or (4) of the Act are authorized to conduct bingo games and are correspondingly exempt from prosecution under the remaining portions of chapter 849. Id. at 1175, 1176. As the district court explained, an organization "authorized" to conduct bingo may violate the bingo statute, whereas activities of organizations "not authorized" to conduct bingo cannot violate provisions of the bingo statute, but may violate other applicable gambling laws. Id. at 1176.
The Florida Supreme Court disagreed. After extensively reviewing the statutory scheme regarding bingo, the Court determined that Florida statutory law draws no distinction between "authorized" and "unauthorized" bingo organizations. Bradenton II, 727 So.2d at 202. Thus, violations under the bingo statute are not punishable under the lottery or RICO statute. Section 849.0931(13) provides penalties for violations of the bingo statute and expressly states that penalties apply to any organization violating any of the statute's provisions. Id.
The Supreme Court's decision in Bradenton II applies here. See Sugarmill Woods Civic Ass'n v. Southern States Utils., 687 So.2d 1346 (Fla. 1st DCA 1997); Hillhaven Corp. v. Dep't of Health and Rehabilitative Services, 625 So.2d 1299 (Fla. 1st DCA 1993); rev. denied, 634 So.2d 623 (Fla.1994). Under Bradenton II, the bingo statute may be applied to the activities of 3B TV in conducting Basil Basset Bingo in Florida. Thus, we reverse the final judgment in its entirety because it was premised on the erroneous partial summary judgment entered with respect to the alleged violations of the bingo statute. We do not address whether the actions of 3B TV violated the bingo statute.

Application of DUTPA
3B TV argues that, because its broadcast is a lawful game promotion under Florida law, it cannot have constituted a violation of DUTPA. By its own terms, DUTPA does not apply to an "act or practice required or specifically permitted by federal or state law." § 501.212(1), Fla. Stat.; see Eirman v. Olde Discount Corp., 697 So.2d 865, 866 (Fla. 4th DCA 1997)(conduct alleged to be violation of DUTPA was authorized by rules of United States Securities & Exchange Commission, *748 thus DUTPA is inapplicable pursuant to section 501.212(1), Florida Statutes). 3B TV asserts that, given the jury's verdict, the jury found facts which would require a conclusion that Basil Basset Bingo complied with the requirements for a valid game promotion under section 849.094(2), Florida Statutes. It follows, argues 3B TV, that, since appellant's activities were a lawful game promotion, appellant did not commit an unfair act or practice under DUTPA.
Section 849.094(1)(a) defines "game promotion," as follows:
(a) "Game promotion" means, but is not limited to, a contest, game of chance, or gift enterprise, conducted within or throughout the state and other states in connection with the sale of consumer products or services, and in which the elements of chance and prize are present. However, "game promotion" shall not be construed to apply to bingo games conducted pursuant to s. 849.0931.

(Emphasis added).
Section 849.094(2) then makes it unlawful
(a) To design, engage in, promote, or conduct such a game promotion, in connection with the promotion or sale of consumer products or services, wherein the winner may be predetermined or the game may be manipulated or rigged so as to:
(1) Allocate a winning game or any portion thereof to certain lessees, agents, or franchises; or
(2) Allocate a winning game or part thereof to a particular period of the game promotion or to a particular geographic area;
(b) Arbitrarily to remove, disqualify, disallow, or reject any entry;
(c) To fail to award prizes offered;
(d) To print, publish, or circulate literature or advertising material used in connection with such game promotions which is false, deceptive, or misleading; or
(e) To require an entry fee, payment, or proof of purchase as a condition of entering a game promotion.

(Emphasis added).
Because the jury found that 3B TV was conducting Basil Basset Bingo in connection with the sale of products and services and did not require a entry fee as a condition to play, the only issues under section 849.094(2) disputed below, it would appear that appellant's reasoning is correct and that Basil Basset Bingo was a lawful game promotion. Thus, if we were to stop our analysis here, we would find ourselves in agreement with appellant on this issue. Our analysis cannot stop at this point, however. The last sentence of section 849.094(1)(a) expressly excludes bingo games from the game promotion safe harbor. As a result, if, on remand, it is determined that 3B TV's game constituted a bingo game under section 849.0931, section 849.094 will offer 3B TV no protection under section 501.212(1).

Daily Penalties
3B TV further argues that, because its broadcast constituted a single continuing activity and DUTPA establishes a maximum penalty of $10,000 applicable to any violation of the act, the jury's award of $772,500, based on a aggregation of daily penalties of $1,500 per day for 515 days, was contrary to law. Although, in view of our holding above, it is not necessary for us to address this question, because this penalty issue will almost certainly arise in any new trial, we address the issue to provide guidance to the trial court. See Hall v. State, 752 So.2d 575 (Fla.2000).
*749 Section 501.2075, Florida Statutes, provides for a civil penalty for willful violation of the act of "not more than $10,000 for each such violation." Under Florida law, a penalty provision must be strictly construed and is not to be extended by construction. See Hotel & Restaurant Comm'n v. Sunny Seas No. One, Inc., 104 So.2d 570, 571 (Fla.1958); In re Forfeiture of $37,388.00, 571 So.2d 1377 (Fla. 1st DCA 1990); Holmberg v. Department of Natural Resources, 503 So.2d 944 (Fla. 1st DCA 1987).
Further, where the violation involves a continuing act under Florida law, a penalty can only be assessed on a per diem basis if the Legislature has expressly authorized the imposition of daily penalties. See Eger v. State, 291 So.2d 676 (Fla. 3d DCA), pet. dismissed, 297 So.2d 28 (Fla.1974). In Eger, the defendant was charged in eight separate counts with practicing dentistry in Florida without a license. Each of the counts charged that such an offense had occurred on a separate date. The defendant was convicted of seven counts and sentenced separately on each of them. The appellate court set aside the sentences, stating:
Thus, Chapter 466 Fla. Stat., F.S.A. provides a penalty for the practice of dentistry without a license in violation of the statute, but the chapter does not contain any provision to the effect that each and every day of a period in which such offense is found to have been in progress shall constitute a separate offense for which the penalty prescribed for practicing dentistry without a license shall be applied and imposed.
Id. at 677. The Eger court noted that, if per diem penalties were authorized, the defendant could have been penalized multiple times "for a single period of unauthorized practice during which his activity was not challenged." Id.
In considering statutes prescribing penalties to determine whether the cumulation of daily penalties is proper, other jurisdictions have also looked to the intentions of the legislature. For example, in Commonwealth v. Garris, 448 Pa.Super. 529, 672 A.2d 343 (Ct.1996), a Pennsylvania court reversed the imposition of a $2,700 fine, based on the nine days during which the defendant was in violation of a statute which provided for a maximum fine of $300, because the statute did not provide that each day of a continuing period of conduct would constitute a separate violation. The court explained:
Instantly, without legislative guidance, it is impossible for us to segregate Garris' inactivity into separate violations of § 750.7. Any attempt to do so merely equates to an arbitrary judicial determination. Taken to its logical extension, the Commonwealth would have us find separate violations for every hour, minute or second that Garris had not obtained a permit. The State essentially requests that we re-write § 750.13 to read that the maximum penalty may be imposed "per day for each violation." While our legislature has repeatedly written such language into the laws of our state, it has failed to do so concerning § 750.13.
Id. at 344.
Similarly, in American Transit Ins. Co. v. Corcoran, 76 N.Y.2d 977, 563 N.Y.S.2d 736, 565 N.E.2d 485 (1990), the Court of Appeal of New York reversed a $8,850 cumulative penalty levied for willful violations of the insurance law which provided for a maximum penalty of $500 per violation. The court stated:
The penalty portion of the determination, however, cannot be sustained because there is no authority to impose a penalty for "each day's lateness in filing" as "an additional violation." Pyramiding *750 of penalties, i.e., treating continuing violations as separate daily transgressions, has been upheld only where cumulative penalties are expressly authorized by statute. When the Legislature intends to permit cumulative penalties for noncompliance with Insurance Law filing requirements, it has expressly done so. No such specificity or formulation is found in the provision applicable in this case. (Citation omitted).
563 N.Y.S.2d 736, 565 N.E.2d at 487.
When the Florida Legislature has intended to permit a penalty to be assessed on a daily basis, or to define each day of continuing conduct as a separate violation, it has expressly so provided. See, e.g., section 403.141(1), Florida Statutes (1997) ("Whoever commits a violation specified in s. 403.161(1) ... is subject to the judicial imposition of a civil penalty for each offense in an amount of not more than $10,000 per offense.... Each day during any portion of which such violation occurs constitutes a separate offense."); section 364.285(1), Florida Statutes ("The commission shall have the power to impose... a penalty for each offense of not more than $25,000.... Each day that such refusal or violation continues constitutes a separate offense."); section 402.310(1)(a), Florida Statutes ("fine not to exceed $100 per violation, per day"); section 400.419(1)(c), Florida Statutes ("Each day during which any person violates any such provision after the date fixed for termination of the violation, as ordered by the agency, constitutes an additional, separate and distinct violation."); section 440.107(2), Florida Statutes (employer not compliant with chapter subject to a fine "in the amount of $100 per day for each day the employer was not in compliance....").[1]
Significantly, section 501.208(7) of DUTPA, which governs violations of Department of Legal Affairs cease and desist orders, expressly provides that each day of a continuing violation of such an order can be separately penalized.[2] By contrast, section 501 .2075, applicable here, provides only that the State may recover "a civil penalty of not more than $10,000 for each such violation." There is no provision in section 501.2075 for separate penalties for multiple days of a continuing offense. Given the express statutory authorization for per diem penalties under section 501.208, we conclude that the absence of similar language in section 501.2075 clearly indicates that the Legislature did not intend to authorize the imposition of daily penalties for continuing conduct under section 501.2075.
The State argues that, because broadcasts by 3B TV gave rise to a separate violation for each game of Basil Basset Bingo broadcast, the penalties imposed below were not contrary to law. Even if we were to agree with this separate violation argument, however, the jury imposed damages based on the number of days the broadcast continued, not based on the number of games broadcast. Further, the question of whether the nature of the *751 broadcast by 3B TV involved a continuing act or a series of separate acts was not expressly addressed below. Thus, we do not decide whether under the facts of this case the transmission of the game or games by 3B TV, if a violation, involved a single continuing violation or a series of separate violations under DUTPA. See, e.g., State v. Ell-Gee, Inc., 255 So.2d 542, 545-46 (Fla. 3d DCA 1971).
Finally, we find no merit in the State's argument on cross-appeal that the trial court erred in denying permanent injunctive relief.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ALLEN, C.J., and WOLF, J., concur.
NOTES
[1] Similarly, the Federal Trade Commission Act specifies that each day of a violation of an FTC order constitutes a separate offense. See 15 U.S.C. § 45(1).
[2] Section 501.208(7), Florida Statutes (1997), provides, in pertinent part:

Any person who violates a cease and desist order of the department ... shall forfeit and pay to the state a civil penalty of not more than $5,000 for each violation.... Each separate violation of such an order shall be a separate offense, except that in the case of a violation through continuing failure or neglect to obey a final order of the department, each day of continuance of such failure or neglect shall be deemed a separate offense.
(Emphasis added).