UNITED STATES of America, Plaintiff–
Appellee, Cross–Appellant,

v.

Jessie J. MILLER, Jr.,' Defendant–
Appellant, Cross–Appellee,

JJM Trucking, Inc., Defendant–Appellant.

No. 92–9248.

United States Court of Appeals,
Eleventh Circuit.

June 14, 1994.

Charles T. Erion, Macon, GA, for appellants.

Harry J. Fox, Asst. U.S. Atty., Macon, GA, for appellee.

Before BIRCH, Circuit Judge, RONEY and CLARK, Senior Circuit Judges.

RONEY, Senior Circuit Judge:

Jessie J. Miller Jr. was convicted of federal gambling and money laundering offenses. He was also convicted, along with his corporation, JJM Trucking, Inc. (JJM), of conspiring to commit those offenses. Both defendants appeal their convictions, challenging the instructions, the sufficiency of the evidence, and the denial of a motion to suppress. We affirm the convictions, but vacate Miller's sentence, finding that it was erroneously based on an offense of which he was not convicted.

The Government cross-appeals the court's reduction of Miller's sentence for acceptance of responsibility. We affirm the court's grant of credit for acceptance of responsibili-

ty, but find that the size of the reduction was improper. We remand for resentencing.

This case involves a gambling business that Billy Cecil Doolittle and his associate, William Van Ward Jr., operated in central Georgia. In April 1990, state law enforcement officers learned of the gambling activities and obtained state court authorization to wiretap the telephones and search the premises that Doolittle and Ward used in connection with their operation. Their investigation revealed a substantial bookmaking business that operated as follows: The bookmaker, Doolittle, would telephone a source in Las Vegas to learn the point spread on various sporting events. Middlemen, or "sub-bookies", would then obtain that information from Doolittle, pass it along to bettors, consolidate the resulting wagers, and telephone the information back to Doolittle using an identification code. Thereafter, the sub-bookies would often collect the wagers, including vigorish, *i.e.*, the extra percentage charged by the bookmaker, and funnel the money to Doolittle through various shell corporations.

The evidence obtained by the state authorities indicated that Miller was one of Doolittle's sub-bookies and that JJM was being used to collect gambling proceeds. In December 1990, the Internal Revenue Service, which was conducting its own investigation, used that evidence to obtain search warrants for Miller's home and place of business. The search resulted in the seizure of various items, including checks and business records, reflecting the defendants' participation in Doolittle's operation.

In November 1991, a federal grand jury returned a 57–count indictment against 14 individuals and four corporations involved in the gambling operation. Miller was charged with six substantive offenses: conducting an illegal gambling business in violation of 18 U.S.C. § 1955 (Count Two), transmitting wagering information between Georgia and Nevada and between Georgia and North Carolina in violation of 18 U.S.C. § 1084 (Counts Three and Four), and three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Eleven–Thirteen). Miller and JJM were also charged under 18 U.S.C. § 371 with conspiring to commit each of the above offenses and with conspiring to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Count One).

The trial of Miller and JJM was severed from that of the other defendants. A jury found both defendants guilty of conspiracy. It also found Miller guilty of each substantive charge, except Count Four, of which he was acquitted. Both Miller and JJM appeal their convictions.

### Count Two: Conducting an Illegal Gambling Business

■ Miller was convicted of conducting an illegal gambling business in violation of 18 U.S.C. § 1955.[1] He seeks reversal on two grounds: improper instructions and insufficient evidence. Section 1955 defines an illegal gambling business as one that 1) operates in violation of state law, 2) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of the business, and 3) has been in substantially continuous operation for more than 30 days or has gross revenue of $2,000 in one day. For purposes of the statute, one "conducts" an illegal gambling business by performing any necessary function in the gambling operation, other than that of a mere bettor. *United States v. Avarello*, 592 F.2d 1339, 1349 (5th Cir.), *cert. denied*, 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979).

■ Miller contends the court erroneously refused to instruct the jury that "[a] person

---

1. Section 1955 provides, in pertinent part, as follows:

    (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

    (b) As used in this section—

    (1) "illegal gambling business" means a gambling business which—

      (i) is a violation of the law of a State or political subdivision in which it is conducted;

      (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

      (iii) has been or remains in substantially continuous operation for a period in excess of thirty days, or has a gross revenue of $2,000 in any single day.

who took bets on five or six occasions over a year's time could not be considered [a] participant in conduct[ing] [a] gambling business for purpose of establishing [the] requisite number of continuous participants." The requested instruction is based on *United States v. Murray*, 928 F.2d 1242 (1st Cir.1991). There, the First Circuit reversed a § 1955 conviction because the evidence did not establish that the statutory minimum of five persons participated in the gambling operation. In calculating the number of participants, the court refused to include persons whose sole involvement in the operation was the acceptance of four or fewer bets over a 56-day period. The court held that the jury could not reasonably have concluded that such intermittent activity constituted active participation in the gambling business for more than 30 days.

The *Murray* case and the proposed instruction are not applicable to Miller's situation. Unlike the alleged participants in *Murray*, Miller's involvement in the gambling operation was not limited to accepting a few bets. Miller admitted at trial that, in addition to taking bets, he collected gambling debts and forwarded them to Doolittle through his trucking and logging businesses. Those additional activities make him a participant in the gambling operation, regardless of how many bets he accepted. *See United States v. Boyd*, 566 F.2d 929, 935 (5th Cir. 1978). The proposed instruction was therefore properly rejected.

Miller argues there was insufficient evidence to show beyond a reasonable doubt that Doolittle's gambling operation had five or more participants, an essential element of the crime. According to Miller, the evidence adduced at trial showed, at most, that four individuals conducted the gambling business.

■ A review of the evidence in the light most favorable to the Government, accepting reasonable inferences and credibility choices by the fact-finder, *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984), makes clear that the jury could reasonably have concluded that any one of several individuals was the jurisdictionally required fifth person in the gambling business. The evidence discloses a substantial network of participants who either acted as sub-bookies, like Miller, or helped finance and set up the business.

### Count Three: Transmission of Wagering Information

Convicted of aiding and abetting the telephonic transmission of wagering information between Georgia and Nevada, in violation of 18 U.S.C. § 1084, Miller alleges the evidence is insufficient to establish that he knew of the interstate activity. Section 1084 prohibits a person engaged in the business of wagering from *knowingly* using a wire communication facility to transmit in interstate commerce information assisting in the placing of wagers on any sporting event.[2] The evidence showed that Doolittle, who resided in Georgia, regularly telephoned a source in Las Vegas to obtain the daily point spreads on sporting events, and that Miller routinely obtained that information from Doolittle and passed it on to other bettors.

■ Contrary to Miller's argument, his section 1084 aiding and abetting conviction need not be supported by evidence that he had personal knowledge of Doolittle's out-of-state source. *See United States v. Sellers*, 483 F.2d 37, 45 (5th Cir.1973), *cert. denied*, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974), *overruled on other grounds by United States v. McKeever*, 905 F.2d 829 (5th Cir. 1990) (en banc), *cert. denied*, 498 U.S. 1070, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991). As an accessory in the gambling business, Miller can be held "liable for any criminal act which in the ordinary course of things was the natural or probable consequence" of that

---

**2.** The statute provides, more fully, as follows:
　(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for

the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information in assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

criminal activity. *Id.* Having testified that he called Doolittle for the point spreads because Doolittle had them before they were otherwise locally available, Miller understood the importance of obtaining timely wagering information. Thus, he cannot plausibly argue that Doolittle's telephone calls to Las Vegas for that very purpose were anything but a natural and probable consequence of conducting a sports bookmaking business. The conviction for aiding and abetting a violation of § 1084 is supported by the evidence.

### Counts Eleven–Thirteen: Money Laundering

Miller challenges the court's instructions relating to his conviction on three substantive counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). That statute makes it illegal to knowingly enter into a financial transaction involving the proceeds of a "specified unlawful activity" with the intent to conceal or disguise the nature, location, source, ownership, or control of those proceeds. Miller contends the court instructed the jury on a "specified unlawful activity" different than those charged in the indictment.

■ The indictment charges Miller with three acts of money laundering, each involving an attempt to disguise gambling proceeds as legitimate business revenues by issuing a check from his trucking and logging businesses to Doolittle's shell corporation. According to the indictment, the checks represented the proceeds of two specified unlawful activities: 1) conducting an illegal gambling business in violation of 18 U.S.C. § 1955, and 2) interstate transmission of gambling information in violation of 18 U.S.C. § 1084. In charging the jury on those counts, however, the court erroneously stated that the specified unlawful activities were violations of Georgia's commercial gambling statute, rather than the federal crimes alleged in the indictment. The court went on to explain the elements of the state gambling offense, and that the checks were allegedly proceeds of that unlawful activity. Because both §§ 1955 and 1084 require proof of elements that are not part of the state offense, Miller argues that the court's instruction deprived him of

his right to have the jury instructed on all the essential elements of the crimes charged. *See United States v. Fitzpatrick,* 581 F.2d 1221, 1223 (5th Cir.1978); *Bearden v. United States,* 320 F.2d 99, 103 (5th Cir.1963), *cert. denied,* 376 U.S. 922, 84 S.Ct. 679, 11 L.Ed.2d 616 (1964) ("In a criminal case, the defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime charged.").

■ Since Miller did not raise this issue before the district court, we review the instruction for plain error. Under that standard, a conviction will be set aside only where the charge, viewed in its entirety and in the context of the entire trial, "is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or where it seriously affects the fairness, integrity or public reputation of a judicial proceeding." *United States v. Fuentes–Coba,* 738 F.2d 1191, 1196 (11th Cir.1984), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985).

■ The instruction on money laundering is clearly flawed. Contrary to the court's statement, a conviction was warranted only if the jury found beyond a reasonable doubt that the checks in question were proceeds from the federal offenses specified in the indictment, and not simply from violations of a state gambling law. Viewing the instructions in their entirety, however, and in the context of the trial, there is no doubt that the jury made the required finding, and that the error is therefore harmless.

The predicate offenses underlying the money laundering charges were the same §§ 1955 and 1084 violations alleged in Counts Two and Three. Thus, although the money laundering instruction did not mention §§ 1955 or 1084, the jury nevertheless received proper instructions on the elements of those offenses in connection with the earlier counts. In this case, therefore, unlike *Fitzpatrick* and *Bearden,* the jury was adequately instructed on each element of the offenses charged. Moreover, because the jury convicted Miller on Counts Two and Three, there is no doubt that they found each element of the §§ 1955 and 1084 violations was proved beyond a reasonable doubt.

The evidence precludes the possibility that Miller's money laundering convictions were based on any predicate offenses other than those specified in the indictment. *See United States v. Restivo,* 8 F.3d 274 (5th Cir. 1993), *petition for cert. filed,* (March 28, 1994). Miller himself testified that the three checks in question represented proceeds from Doolittle's gambling business, which, according to the jury, operated in violation of both §§ 1955 and 1084. The flawed instruction is therefore not reversible error because any potential harm was neutralized by the court's other instructions and by the evidence presented at trial. *See United States v. Duncan,* 855 F.2d 1528, 1532 (11th Cir.1988), *cert. denied,* 489 U.S. 1029, 109 S.Ct. 1161, 103 L.Ed.2d 220 (1989).

### Count One: Conspiracy

■ In challenging their conspiracy convictions, Miller and JJM rely on the same arguments Miller raised in connection with the substantive counts. As shown above, those arguments lack merit. The defendants' convictions under 18 U.S.C. § 371 are therefore affirmed.

### Motion to Suppress

■ Miller challenges all of his convictions on the district court's denial of his motion to suppress evidence obtained during searches of his home and business. The searches were conducted pursuant to warrants executed by a United States Magistrate Judge, and resulted in the seizure of incriminating evidence that was used at trial. Miller argues that the executing agents could not have reasonably relied upon the warrants because they were facially overbroad and because there was no probable cause to justify the search of his home. These grounds for suppression, however, were not meaningfully presented to, and thus not addressed by, the district court. They will not be considered for the first time on appeal.

### Sentence

Count One of the indictment charged Miller and JJM with a multiple-object conspiracy: conspiring to violate §§ 1955, 1084, and 1956(a)(1)(B)(i), substantively charged under Counts Eleven through Thirteen, and conspiring to commit an offense not substantively charged, namely, money laundering in violation of § 1956(a)(1)(A)(i). The jury's general verdict of guilt on Count One did not specify which of those four offenses was the object of the conspiracy.

In calculating Miller's sentence, the district court treated the conspiracy conviction as four distinct convictions, and imposed sentence based on the most serious offense charged, *i.e.* the conspiracy to violate § 1956(a)(1)(A)(i). *See* U.S.S.G. §§ 1B1.2(d), 3D1.3(a). The defendants argue that the conspiracy conviction could not have been based on the goal of violating § 1956(a)(1)(A)(i) because the jury was not properly instructed on elements of that offense.

Unlike § 1956(a)(1)(B)(i), which prohibits only the *concealment* of the proceeds of unlawful activity, § 1956(a)(1)(A)(i) makes it illegal to enter into a financial transaction involving the proceeds of unlawful activity "with the *intent to promote* the carrying on of specified unlawful activity" (emphasis added). It is undisputed that the court's jury instructions never even mentioned § 1956(a)(1)(A)(i), much less the essential elements of that offense.

■ Because the defendants did not bring this omission to the court's attention at trial, we review for plain error. Fed. R.Crim.P. 52(b). It is well established that the "trial court has the obligation to instruct the jury on *all* the essential elements of the crime charged, even though the defendant fails to request such an instruction." *Potts v. Zant,* 734 F.2d 526, 530 (11th Cir.1984), *cert. denied,* 475 U.S. 1068, 106 S.Ct. 1386, 89 L.Ed.2d 610 (1986) (quoting *United States v. Herzog,* 632 F.2d 469, 472 (5th Cir.1980) ). The court's failure to so instruct is plain error if the defendant's substantial rights are adversely affected. *Fitzpatrick,* 581 F.2d at 1223. Such is the case here.

■ The gravamen of a § 1956(a)(1)(A)(i) violation is the intent to promote a specified unlawful activity. Even read as a whole, the instructions simply do not inform the jury of this basic element, and therefore provide no

method for determining whether the defendants conspired to commit the offense. *See Bearden v. United States,* 320 F.2d at 103 (citing *Screws v. United States,* 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945)); *see also United States v. Conover,* 845 F.2d 266, 268 (11th Cir.1988) (conspiracy conviction cannot be based on theory that was charged in indictment, but not subject of jury instruction); *United States v. Winfield,* 997 F.2d 1076, 1081 (4th Cir.1993) (defendant could not be convicted of conspiracy to launder money where, in connection with multiple-object conspiracy charge, court failed to instruct on elements of money laundering). Thus, although the defendants were properly convicted of conspiracy—based on the other objectives charged and properly instructed— the court erred in determining, for sentencing purposes, that they were convicted of conspiring to violate § 1956(a)(1)(A)(i).

Both parties argue as though the district court's determination of Miller's guideline range was based on U.S.S.G. § 1B1.3, which pertains to relevant conduct of co-conspirators. That is not the case. The court adopted the guideline application set forth in the presentence report and that report was based, not on § 1B1.3, but on the mistaken assumption that Miller had been convicted of violating § 1956(a)(1)(A)(i). Because the district court improperly imposed sentence based on a conspiracy to violate § 1956(a)(1)(A)(i), the sentence on the conspiracy count is vacated and the case remanded for resentencing.

*Cross–Appeal: Acceptance of Responsibility*

The Government cross-appeals the court's decision to grant Miller a three-level reduction for acceptance of responsibility. Section 3E1.1 of the Sentencing Guidelines permits the court to decrease the base offense level by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense," and by an additional level if he provides timely information concerning his involvement in the offense or gives the authorities timely notice of his intention to plead guilty.

The Government challenges the court's action, contending that there is no foundation for granting Miller any credit for acceptance of responsibility, or, alternatively, that the reduction should be only two levels.

■ "The district court is in a unique position to evaluate whether a defendant has accepted responsibility for his acts, and this determination is entitled to great deference on review." *United States v. Pritchett,* 908 F.2d 816, 824 (11th Cir.1990). Its conclusion will therefore stand unless it lacks foundation. Here, the court found that, although Miller consistently denied being a member of the gambling business, he displayed acceptance of responsibility by testifying about his activities in an honest way that "translated into an obvious finding of guilt." The court implicitly determined that Miller denied his guilt only because he did not understand the legal consequences of his acts.

■ The Government complains that this is clear error because the court rewarded Miller for merely being a "poor witness". We disagree both with the Government's characterization of one who testifies truthfully under oath as a "poor witness", and with its suggestion that Miller's admissions regarding his activities did not provide a sufficient basis for finding acceptance of responsibility. The commentary to § 3E1.1 expressly provides that the court should consider whether the defendant "truthfully admit[s] the conduct comprising the offense(s) of conviction." § 3E1.1 comment. (n. 1(a)). The court did precisely that, and its finding, therefore, is not without foundation. We affirm its determination that Miller accepted responsibility for his acts.

■ As to the Government's alternative argument, however, it appears that the court misapplied § 3E1.1 by granting Miller a three rather than a two-level reduction. The court made no findings regarding the additional reduction and there is clearly no basis for it. *See* § 3E1.1 comment. (n. 6) ("In general the conduct qualifying for a decrease in offense level under subsection (b)(1) or (2) will occur particularly early in the case."). Even Miller does not argue that he is entitled to a three-level reduction. On remand, therefore, Miller's base offense level should

be reduced by only two levels for acceptance of responsibility.

### *Conclusion*

We affirm the convictions but vacate Miller's sentence, finding that he was not convicted of conspiracy to violate § 1956(a)(1)(A)(i). This case is remanded for resentencing in accordance with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.