**UNITED STATES COURT OF APPEALS**

**July 27, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARCELINO NAJERA-MORALES,

Defendant-Appellant.

No. 03-2186
(D.C. No. CR-03-358-MV)
(New Mexico)

**ON REMAND FROM THE
UNITED STATES SUPREME COURT
ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HOLLOWAY**, and **MURPHY,** Circuit Judges.

Marcelino Najera-Morales was convicted of illegal reentry following

deportation, in violation of 8 U.S.C. §§ 1326(a)(1) and (a)(2). He appealed the

district court's refusal to grant a downward adjustment based on acceptance of

responsibility, pursuant to U.S.S.G. § 3E1.1, among other issues. We affirmed.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

*United States v. Najera-Morales*, 2004 WL 2445639 (10th Cir. Nov. 2, 2004)

(unpublished disposition). He filed a petition for writ of certiorari to the Supreme

Court seeking resentencing under *United States v. Booker*, 125 S. Ct. 738 (2005).

The Supreme Court granted the writ, vacated the judgment, and remanded the

case to us for further consideration in light of *Booker*. *Najera-Morales v. United

States*, 125 S. Ct. 1997 (2005). We asked the parties to file supplemental briefs

addressing the impact of *Booker* on this case. We conclude the district court

committed plain error in sentencing Mr. Najera-Morales, and we vacate his

sentence and remand for resentencing in accordance with *Booker*.

Background facts and the procedural history of Mr. Najera-Morales' case

are set forth in our previous disposition in this case. We state here only the facts

and history now relevant to the sentencing issue before us. Mr. Najera-Morales

was convicted after a jury trial of illegal reentry after deportation. The

presentence report determined his adjusted offense level was 24, his criminal

history was category III, and his guideline range was 63 to 78 months. It

recommended that he not receive a two-level downward adjustment for

acceptance of responsibility under sentencing guideline § 3E1.1. It noted he had

gone to trial and his case was not one of those rare situations that permit the

adjustment in such a circumstance, such as to "preserve issues that do not relate

to factual guilt" by challenging the constitutionality of a statute or the

applicability of a statute to a defendant's conduct. U.S.S.G. § 3E1.1, cmt. n.2.

Mr. Najera-Morales objected to this recommendation at sentencing. At the time of his arrest, he had admitted he entered the country illegally from Mexico after deportation and without applying for permission. In addition, he presented evidence that prior to his arrest he had taken significant steps to become a citizen, which he believed legally justified his presence in the country. Thus, he had applied to the Immigration and Naturalization Services (INS)[1] for permanent residency in early 2001, based on his marriage to a United States citizen, and he received a temporary work authorization. In connection with this process, the INS accepted from him nonrefundable fees totaling over $1400 and met with him over twenty times. It was not until February 2003 that the INS informed him his application was denied because he had previously been deported, and then arrested him.

The district court overruled Mr. Najera-Morales' objection. It stated that although it believed he had actually accepted responsibility, his circumstances did not fall within the requirement of § 3E1.1. The court sentenced Mr. Najera-Morales at the bottom of the guideline range to 63 months. On appeal, we

---

[1]On March 1, 2003, the former INS was abolished and its functions divided among agencies within the newly-formed Department of Homeland Security. We continue to refer to the agency as "INS" in this decision.

affirmed the sentence because we similarly concluded that his circumstances were not congruent with the guidelines' formulation of acceptance of responsibility.

Mr. Najera-Morales did not challenge his sentence below on the ground that it violated his Sixth Amendment right to a jury trial. We therefore review his sentence for plain error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc).[2] To establish plain error, Mr. Najera-Morales must show that 1) the district court committed error, 2) the error was plain, and 3) it affected his substantial rights. *United States v. Cotton,* 535 U.S. 625, 631 (2002); *Gonzalez-Huerta*, 403 F.3d at 732. If the error meets these conditions, we may exercise our discretion to correct the error if it would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Cotton*, 535 U.S. at 632.

The district court committed error in sentencing Mr. Najera-Morales because it treated the guidelines as mandatory, thereby violating the remedial holding of *Booker*. *See United States v. Trujillo-Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005). Moreover, the district court's error is now "plain" or "obvious." *Johnson v. United States*, 520 U.S. 461, 468 (1997) (holding that "where the law at the time of trial [or sentencing] was settled and clearly contrary to the law at

---

[2]In order to preserve the issue for Supreme Court review, Mr. Najera-Morales argues in his brief that we should adopt a less stringent plain error reversal standard than the one we employed in *United States v. Gonzalez-Huerta*, 403 F.3d 727 (10th Cir. 2005) (en banc). Needless to say, this panel has no power to do that.

the time of appeal--it is enough that an error be 'plain' at the time of appellate consideration").

In order to demonstrate that the mandatory application of the guidelines affected substantial rights, a defendant must show a "reasonable probability" that the defects in his sentencing altered the result of the proceedings. *Trujillo-Terrazas*, 405 F.3d at 819 (quoting *United States v. Dominguez-Beritez*, 542 U.S. 74 (2004)). Mr. Najera-Morales can meet this standard "by demonstrating a reasonable probability that had the district court applied a post-*Booker* advisory sentencing framework, he would have received a lower sentence." *Id.* In this case, the district court referred to Mr. Najera-Morales' dealings with the INS in trying to obtain permanent residency, and stated the following about the acceptance of responsibility adjustment before it pronounced his sentence:

> I can . . . see that his act isn't an act of an obstinate man. He just–he has–a man with fifth grade education. It took him a long time to raise the money [in fees to the INS]. He kept paying it . . . . *This is unfortunate. This is an awful lot of time, too.* But I can–I understand why he wanted to contest–all he really wanted was an opportunity to explain why he thought it was legal and lawful for him to remain in the United States. I think the legal intricacies is something we can't expect him to understand . . . .
>
> I looked at whether it was an argument as to the application of the statute to him, and I don't see that that fits, either, because of the fact that the issue is his confusion about being permitted to remain in the United States, and that's not what he was charged with. The charge here is that he again illegally reentered . . . .
>
> He knew he reentered illegally when he did so. I think he thought somehow that was salvaged, or cured by the fact that he was getting these

legal permits. I'm sorry that the two of you [defense counsel and defendant] were unable to reach an understanding, and that he was unable to understand how this works, but as a result, then, I don't believe that it would be appropriate or lawful for him to get acceptance of responsibility .

*If I could award it, I would, because I think he accepts his responsibility, but given the confines of the acceptance of responsibility case law in the Tenth Circuit*, it has to be challenging the Constitutionality of the statute or the applicability of a particular statute to his case. I've explained why I don't believe that that is appropriate.

Rec., vol. 5, at 17-19 (emphasis added).

The district court clearly expressed sympathy for Mr. Najera-Morales, concern over the length of his sentence, and dissatisfaction with the mandatory nature of the guidelines that precluded it from awarding him an adjustment for acceptance of responsibility. As a result, the district court would likely have sentenced Mr. Najera-Morales to a lesser sentence in an advisory guidelines system. *See Trujillo-Terrazas,* 405 F.3d at 819-20. If the court had granted him the two-level downward adjustment for acceptance of responsibility, his guideline range would have been 51 to 63 months. He likely would have been sentenced to 51 months imprisonment, or more than one year less than his current sentence of 63 months. We decline to deem a one-year difference in a sentence, which constitutes a twenty-five percent increase in the length of imprisonment in this case, insubstantial. Indeed, the government concedes that the district court's error affected Mr. Najera-Morales' substantial rights because the court was sympathetic to his circumstances, it would probably have granted him a decrease

-6-

in sentence, and the error therefore resulted in a one-year increase in his sentence. Aple. Br. at 8-9.

We possess discretion to correct plain error when it affects the integrity, fairness, or public reputation of judicial proceedings. *Johnson*, 520 U.S. at 467; *Trujillo-Terrazas*, 405 F.3d at 820-21. This standard is an "especially demanding" one, requiring a defendant to show an error is "particularly egregious and that failure to correct it would result in a miscarriage of justice." *United States v. Dowlin*, 408 F.3d 647, 671 (10th Cir. 2005). Factors that support an exercise of our discretion include: a sentence increased substantially based on a *Booker* error; a showing that the district court likely would impose a significantly lighter sentence on remand; a substantial lack of evidence to support the entire guidelines sentence imposed; a showing that objective consideration of the 18 U.S.C. § 3553(a) factors warrants a departure; or other evidence peculiar to the defendant that demonstrates a complete breakdown in the sentencing process. *See id.* at 671.

As discussed above, Mr. Najera-Morales' sentence was substantially increased based on a *Booker* error and the record shows the district court likely would impose a significantly lighter sentence on remand. Moreover, the district court believed Mr. Najera-Morales had actually accepted responsibility within the spirit, although not the letter, of § 3E1.1. The purposes of § 3E1.1 include

promoting society's interests in "the reduction of crime . . . and the increased potential for rehabilitation among those who feel and show true remorse for their anti-social conduct." *United States v. Henry*, 883 F.2d 1010, 1011-12 (11th Cir. 1989) (citation omitted). In stating that it believed Mr. Najera-Morales accepted responsibility, the district court effectively found that Mr. Najera-Morales exhibited sincerity, remorsefulness, and rehabilitation potential equivalent to those exhibited by other defendants who are entitled to the acceptance of responsibility adjustment under § 3E1.1.

The district court's conclusion has strong support in the record. When Mr. Najera-Morales applied for permanent residency with the INS, he gave the agency his correct name and acknowledged his true place of birth and the fact that he was a Mexican citizen. He also completed all the paperwork and provided all the documents the INS requested, including proof of his marriage, medical records, and fingerprints. When he was arrested, he admitted he had been deported, he had reentered the country illegally, and he had not submitted an application for permission to reenter. At trial, he only contested whether the actions of the INS established that the Attorney General had in effect consented to his reentry, and he never claimed that the Attorney General actually informed him he could reenter. The district court found that Mr. Najera-Morales only went to trial because he was understandably confused about the immigration laws, especially

in light of his minimal education and the INS's seemingly welcoming response to his application for permanent residency. Given the very unusual circumstances of Mr. Najera-Morales' case, the district court's finding that he deserved an acceptance of responsibility adjustment is entitled to great deference. *Trujillo-Terrazas*, 405 F.3d at 821. The court was in a unique position to evaluate Mr. Najera-Morales' acceptance of responsibility. *See* § 3E1.1 cmt. n.5. It was also best situated to assess his credibility and character.

Objective consideration of the § 3553(a) factors also support the conclusion that Mr. Najera-Morales' circumstances warrant a downward adjustment. The district court's findings at sentencing implicate the § 3553(a) factors, including: "characteristics of the defendant," (a)(1); the need "to protect the public from further crimes of the defendant," (a)(2)(c); and the "need to avoid unwarranted sentencing disparities among defendants," (a)(6). The court recognized that Mr. Najera-Morales possesses a fifth-grade education and thus had difficulty understanding the immigration laws. Rec., vol. 5, at 17, 23. At sentencing, the court explained the sentence and its reasoning to him in Spanish:

> I understand your explanation. It is a shame that we cannot reduce your time, given your explanation, but it is not possible for me to reduce your time. I understand that you must have been confused because of the actions of the Immigration department. They gave you permission to work, accepted your money, gave you time to come in . . . . It is very complicated. Many times, people get nervous in court, and you have not had the preparation that many of us have had with regard to going to school for a long time. And these are complicated things, and I don't blame you

-9-

for not having understood before, but understand it now.

*Id.* at 20-21, 23.  In addition, the court recognized Mr. Najera-Morales' family circumstances imposed special hardship on him because he is married to a United States citizen.  It advised Mr. Najera-Morales that because he was going to be deported after he served his sentence, he would have to seek to build a new life in Mexico with his wife and family.

Moreover, because the court found that Mr. Najera-Morales had accepted responsibility, was remorseful, and had rehabilitation potential, factor § 3553(a)(2)(c) is satisfied because of a lack of any showing of need to protect the public from future crimes.  When Mr. Najera-Morales informed the court that he accepted responsibility, he further expressed to the court his desire to be sent back to Mexico as soon as possible.  After receiving his sentence, Mr. Najera-Morales stated that had he not believed he could make his status legal in the United States, he would not have reentered the country.  The dialogue between the court and Mr. Najera-Morales shows that he understands he cannot reenter the United States in the future and that he is not likely to endeavor to do so.

Finally, the very unusual circumstances in Mr. Najera-Morales' case implicate § 3553(a)(6), which seeks to achieve uniform sentencing of defendants with similar conduct.  *Trujillo-Terrazas*, 405 F.3d at 820.  Given the district court's factual finding that he effectively accepted responsibility, his punishment

-10-

is not in accord with his conduct.  His acceptance of responsibility for his illegal status in the country was within the spirit of § 3E1.1, but he was not able to receive consideration under the guidelines commensurate with his candor, cooperation with authorities, and good faith efforts to become legal.  Moreover, Mr. Najera-Morales' actions in seeking to "cure" his illegal reentry by openly approaching the INS, paying the not insubstantial agency fees, and persistently remaining in contact with the authorities, is far from "run of the mill" among defendants faced with similar immigration concerns, and merits special consideration.  *See id.* at 819, 820.  In sum, Mr. Najera-Morales presents a "compelling case" for departure under § 3553(a), and to allow the "mismatch between the sentence suggested by the principled application of the post-*Booker* sentencing framework and the actual sentence given to him would call into question the fairness, integrity, and public reputation of judicial proceedings."  *Id.* at 821.

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** for resentencing.  We reinstate our prior disposition, *United States v. Najera-Morales*, 2004 WL 2445639 (10th Cir. Nov. 2, 2004), to the extent that

it does not conflict with this opinion.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge

F I L E D
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

NOV 2 2004

**TENTH CIRCUIT**

PATRICK FISHER
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARCELINO NAJERA-MORALES,

Defendant-Appellant.

No. 03-2186
(D.C. No. CR-03-358-MV)
(New Mexico)

## ORDER AND JUDGMENT*

Before **SEYMOUR**, **HOLLOWAY**, and **MURPHY,** Circuit Judges.

Marcelino Najera-Morales was convicted of being found in the United States subsequent to illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a)(1) and (a)(2). He appeals the district court's denial of a mistrial for erroneous references to his criminal record and its refusal to grant him a downward adjustment for acceptance of responsibility. We affirm.

An undocumented person who has been previously deported may not

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

reenter the country "unless . . . the Attorney General has expressly consented to such alien's reapplying for admission." 8 U.S.C. § 1326(a)(2). An aggravated felony provision in the statute, section (b)(2), authorizes an increase in sentence but is not an element of the crime. *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998); *United States v. Martinez-Villalva*, 232 F.3d 1329, 1331-32 (10th Cir. 2000). Nevertheless, the district court denied Mr. Najera-Morales' motion in limine to exclude references to his criminal record at trial on the erroneous belief that the charged crime required proof of an aggravated felony.

During jury selection and at trial, the prosecutor and the district court made several references to Mr. Najera-Morales' criminal record, including prior felonies of kidnapping and reentry after deportation, and the court admitted an exhibit regarding a prior criminal conviction. The court subsequently recognized its error but denied Mr. Najera-Morales' motion for a mistrial, concluding that the references to his criminal record could be corrected by appropriate instructions to the jury.[1]

We review the denial of a motion for mistrial for abuse of discretion. *United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000) (citation

---

[1]The court's instructions to the jury cautioned that the indictment and lawyers' statements are not evidence, did not include the prior conviction for aggravated felony as an element, and advised that the exhibit regarding the previous conviction had been withdrawn as irrelevant to any element of the crime.

omitted). In determining whether the court abused its discretion, we assess what effect any error "had or reasonably may be taken to have had upon the jury's decision . . . [and] whether it had substantial influence." *United States v. Caballero*, 277 F.3d 1235, 1244 (10th Cir. 2002) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946)). Mr. Najera-Morales contends the references to his prior convictions were inherently prejudicial due to their serious nature and similarity to the present charge. The government rightly concedes it should not have introduced Mr. Najera-Morales' criminal history, *see Martinez-Villalva*, 232 F.3d at 1331-32, but asserts the mistake was harmless because the evidence at trial was overwhelming.

The inculpatory evidence presented to the jury was strong. Mr. Najera-Morales had admitted to arresting officers that he illegally entered the country after being deported. At trial, he contended there was reasonable doubt about whether the attorney general had consented to his reentry, arguing in part that the INS's subsequent conduct indicated he had *de facto* permission to be in the United States. He based this assertion on the fact that he had applied for permanent residency with the INS in early 2001 and the INS thereafter granted him temporary work authorization, took from him nonrefundable fees totaling over $1400, and met with him over twenty times. It was not until February 2003 that the INS informed him his application was denied because he had been

previously deported, and then arrested him.

Mr. Najera-Morales' theory has no support in the law. The statute itself requires "express" permission. 8 U.S.C. § 1326 (a)(2)(A). In holding this law does not require specific intent to reenter illegally, we have recognized that "Congress placed the burden of correctly obtaining permission from the Attorney General and reentering the United States legally on the alien." *United States v. Gutierez-Gonzalez*, 184 F.3d 1160, 1165 (10th Cir. 1999). Given the lack of viability of a theory of implied permission, and in view of the record evidence of his illegal reentry, we are satisfied the jury was not substantially influenced by the error. *See United States v. Anaya*, 117 F.3d 447 (10th Cir. 1997) (where evidence on a § 1326 charge was overwhelming, erroneous admission of prior felony conviction not reversible error). The district court did not abuse its discretion in denying the motion for mistrial.

Prior to sentencing, Mr. Najera-Morales objected to the presentence report's conclusion that he did not merit a two-level downward adjustment for acceptance of responsibility under sentencing guideline § 3E1.1, pointing out he had admitted when arrested to entering illegally after deportation and to doing so without applying for permission to reenter the country. The government countered that Mr. Najera-Morales went to trial to negate his factual guilt and that he argued the government failed in its burden to prove he did not have permission

to enter the country.

The guideline makes clear that a defendant who goes to trial may only qualify for the adjustment in "rare situations," such as attempting to "preserve issues that do not relate to factual guilt," like a challenge to the constitutionality of a statute or to the applicability of the statute to a defendant's conduct. U.S.S.G. § 3E1.1, cmt. n.2. The district court overruled Mr. Najera-Morales' objection, explaining:

> I looked at whether it was an argument as to the application of the statute to him, and I don't see that that fits, either, because of the fact that the issue is his confusion about being permitted to remain in the United States, and that's not what he was charged with.[2] The charge here is that he again illegally reentered.
>
> He knew he reentered illegally when he did so. I think he thought that somehow that was salvaged, or cured by the fact that he was getting these legal permits. I'm sorry that . . . he was unable to understand how this works, but as a result, then, I don't believe that it would be appropriate or lawful for him to get acceptance of responsibility.
>
> If I could award it, I would, because I think he accepts his responsibility, but given the confines of the acceptance of responsibility case law in the Tenth Circuit, it has to be challenging the Constitutionality of the statute or the applicability of a particular statute to the case.
>
> I've explained why I don't believe that that is appropriate.

---

[2]In noting that he was not charged with illegally "remaining" in the country, the district court appeared to be distinguishing the unlawful reentry of removed aliens from a situation where an individual has overstayed his authorization to be in the country.

Rec., vol. 5, at 18-19.

We review a district court's interpretation of the sentencing guidelines *de novo* and its factual findings for clear error. *United States v. Bailey*, 327 F.3d 1131, 1147 (10th Cir. 2003) (quotation omitted). Because the district court is in an unique position to evaluate a defendant's acceptance of responsibility, its determination is entitled to great deference. U.S.S.G. § 3E1.1, cmt. n.5.

Mr. Najera-Morales contends the court incorrectly understood its authority to depart, asserting that he did in fact challenge the applicability of the statute by contesting the legal interpretation of whether the facts in his case could have implied permission. He highlights that the court actually found he had accepted responsibility for the unlawful reentry. He also claims the adjustment is supported by the fact that he had a sincere, albeit erroneous, view of the law. We are not persuaded.

This case is not like *United States v. Gauvin*, 173 F.3d 798, 806 (10th Cir. 1999), where we upheld an acceptance of responsibility adjustment for a defendant who went to trial to challenge whether his factual state of mind legally rose to the required level of intent. Mr. Najera-Morales' concern is with the court's application of the guidelines to the facts of his case, not its legal interpretations. He clearly contested his factual guilt at trial by arguing the government failed to prove he reentered the country without permission.

Although the court found he had "accepted responsibility," it held this acceptance did not meet the standard for an acceptance of responsibility as defined by the guidelines. It concluded that his theory of subsequent "de facto" permission was not relevant to his conviction because the illegal reentry had already occurred. His theory could not, therefore, be the basis for a challenge to the statute's applicability to him. Even if misapprehension of the law were a ground for the acceptance of responsibility adjustment, the court found Mr. Najera-Morales was not confused about the law under which he was convicted because he knew it was illegal for him to enter the country without permission.[3] We do not believe the court misunderstood its authority to grant an acceptance of responsibility reduction and we decline to overturn its decision to deny the reduction.

We **AFFIRM**.

                                        ENTERED FOR THE COURT


                                        Stephanie K. Seymour
                                        Circuit Judge

---

[3]This case is therefore unlike those cited by Mr. Najera-Morales, where the defendants did not understand the legal consequences of their actions, *see United States v. Miller*, 22 F.3d 1075, 1081 (11th Cir. 1994); *United States v. Schultz*, 917 F. Supp. 1343, 1353 (N.D. Iowa 1996), or where the defendant challenged the government's legal theory that venue was proper, *see United States v. Fell*, 78 F.3d 168, 171-72 (5th Cir. 1996).