[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 16-15451; 16-15609

_____

D.C. Docket No. 3:16-cr-00017-MCR-1

UNITED STATES OF AMERICA,

Plaintiff - Appellant - Cross Appellee,

versus

LARRY L. MASINO,

Defendant - Appellee - Cross Appellant,

DIXIE L. MASINO,

Defendant - Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(September 7, 2017)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, Circuit Judge, and
MOORE,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable K. Michael Moore, United States District Chief Judge for the Southern District of
Florida, sitting by designation.

We must decide whether an indictment that alleges that a business was in violation of the Florida bingo and gambling house statutes, Fla. Stat. §§ 849.01, 849.02, 849.03, 849.0931, sufficiently alleges one of the essential elements needed to obtain a conviction under the federal gambling statute: that the business "is a violation of" state law, 18 U.S.C. § 1955(b)(1)(i). Larry Masino and his ex-wife Dixie Masino own a Florida business called Racetrack Bingo Inc. Although Florida law generally prohibits gambling, it allows bingo to be conducted under stringent regulations. *See* Fla. Stat. § 849.0931. The government alleges a scheme in which the Masinos, through Racetrack Bingo, operated illegal bingo games on behalf of several charities, defrauded those charities as to the legality of their operation, charged the charities unlawfully excessive fees, and then laundered the profits. Count Two of the indictment charges the Masinos with violating the federal gambling statute, 18 U.S.C. § 1955. To establish a violation of that statute, the government must prove, among other things, that the business is an "illegal gambling business," which in turn requires proof that the business "is a violation" of state law, *id.* § 1955(b)(1)(i). The district court dismissed part of Count Two on the ground that a violation of the Florida bingo statute could never convert a bingo business into an illegal gambling business. The government appealed, and Larry Masino filed a cross-appeal. Because we decline to exercise pendent appellate

2

jurisdiction over Larry Masino's interlocutory cross-appeal, we dismiss the cross-appeal. And because a gambling business that violates the Florida bingo statute, Fla. Stat. § 849.0931, could be "a gambling business which is a violation of the law of a State," 18 U.S.C. § 1955(b)(1)(i), we reverse the dismissal of the indictment and remand.

## I. BACKGROUND

Former spouses Larry and Dixie Masino and their children own Racetrack Bingo Inc., a Florida corporation that conducted bingo games on behalf of several charities in Fort Walton Beach, Florida. Each charity sponsored two bingo sessions a week. The charities collectively formed Ft. Walton Beach Charities LLC to manage and distribute proceeds of the bingo games. At the direction of the Masinos, each charity entered into annual lease agreements with Racetrack Bingo. The leases provided that Beach Charities would pay Racetrack Bingo a fee that ranged from $1,050 to $1,770 a bingo session. The lease fee did not cover electronic bingo equipment rental, paper bingo supplies, bank fees, and set up and cleanup costs.

In February 2016, a federal grand jury returned a 41-count indictment against Larry and Dixie Masino for conspiracy to commit wire fraud, operating an illegal gambling business, conspiracy to commit money laundering, and money

3

laundering. 18 U.S.C. §§ 1343, 1349, 1955, 1956(h), 1957. In June 2016, a federal

grand jury returned a superseding indictment that added predicate offenses to

Count Two, operating an illegal gambling business. Count Two states as follows:

> Between on or about January 1, 2006, and on or about July 31, 2015,
> in the Northern District of Florida, the defendants,
>
> Larry L. Masino and Dixie L. Masino,
>
> did conduct, manage, supervise, direct, and own all or part of an
> illegal gambling business, to wit, a gambling business involving bingo
> games called Racetrack Bingo Inc., which business was in violation of
> the laws of the State of Florida, to wit, Florida Statutes, Sections
> 849.01, 849.02, 849.03, and 849.0931, and which involved five or
> more persons who conducted, managed, supervised, directed, and
> owned all or part of said illegal gambling business, and which
> remained in substantially continuous operation for a period in excess
> of 30 days, and which had a gross revenue of $2,000 in any single
> day.
>
> In violation of Title 18, United States Code, Sections 1955 and 2.

The prosecution proceeded under the theory that the Masinos "defrauded the

charities by falsely representing that they were operating [Racetrack Bingo] in

compliance with Florida law. Instead, [they] falsely inflated the amount charged

for rent and expenses so [they] could unlawfully retain bingo proceeds that were

otherwise supposed to go to the charities." The Masinos then "conspired to launder

and did launder the proceeds of their fraud and illegal gambling operation." The

government suggested that "the amount ordered in restitution, forfeiture, and any

money judgment [could] exceed approximately $5.8 million."

4

Larry and Dixie Masino moved to dismiss Count Two of the indictment, Fed. R. Crim. P. 12(b)(3)(B). The district court initially granted the motion to dismiss Count Two in its entirety because it determined that "bingo offenses are not a form of illegal gambling under Florida law, and therefore, a violation of the Florida Bingo statute may not serve as a predicate offense for purposes of the Federal Gambling statute." But the district court later vacated that order and instead granted in part and denied in part the Masinos' motion to dismiss Count Two. The district court explained, "Given that the Florida Legislature plainly expressed its intent by including offenses chargeable under the Bingo Statute as forms of 'racketeering activity' under the 2013 amendment to Florida's [Racketeering Act], it necessarily follows that a violation of the Bingo Statute now constitutes an 'illegal gambling business' in violation of Florida law for purposes of the [federal gambling statute]." The district court dismissed Count Two to the extent it charged a violation based on bingo activities that occurred before the amendment to Florida's Racketeering Act, which occurred on April 10, 2013. The district court concluded that the indictment failed to charge the essential element that Racetrack Bingo was an "illegal gambling business" because no violation of the Florida bingo statute could convert a bingo company into an illegal gambling business.

5

The government appealed the partial dismissal of Count Two, 18 U.S.C. § 3731. Larry Masino cross-appealed on the ground that the district court should have dismissed Count Two in its entirety. Dixie Masino did not file a cross-appeal. After we asked the parties to address the basis for our jurisdiction over the cross-appeal, the government argued that we lack jurisdiction over a cross-appeal of a denial of a motion to dismiss an indictment. We construed this response as a motion to dismiss the cross-appeal and carried that motion with the case.

## II. STANDARD OF REVIEW

We review the legal sufficiency of the allegations in an indictment *de novo*. *United States v. York*, 428 F.3d 1325, 1331 n.8 (11th Cir. 2005).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that even if we have the authority to exercise pendent appellate jurisdiction when the government appeals from the dismissal of an indictment, 18 U.S.C. § 3731, we decline to exercise that jurisdiction over the cross-appeal. Second, we explain that Count Two of the indictment is legally sufficient because there are at least some violations of the Florida bingo statute, Fla. Stat. § 849.0931, that could make Racetrack Bingo an "illegal gambling business" under federal law, 18 U.S.C. § 1955.

6

A.    *We Decline to Exercise Pendant Jurisdiction over Larry Masino's Cross-Appeal.*

Ordinarily, we cannot review a criminal case "until conviction and imposition of sentence." *Flanagan v. United States*, 465 U.S. 259, 263 (1984); *see* 28 U.S.C. § 1291. But there is a statutory exception for "an appeal by the United States . . . from a[n] . . . order of a district court dismissing an indictment." 18 U.S.C. § 3731. And the doctrine of pendent appellate jurisdiction allows a federal court to "address nonappealable orders if they are 'inextricably intertwined' with an appealable decision or if 'review of the former decision [is] necessary to ensure meaningful review of the latter.'" *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir. 1999) (alteration in original) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995)).

Larry Masino argues that his cross-appeal is inextricably intertwined with the order the government appeals, but even if we have jurisdiction over that cross-appeal, we decline to exercise it. *See, e.g.*, *Hartley v. Parnell*, 193 F.3d 1263, 1272 (11th Cir. 1999) ("To the extent we have discretionary pendent appellate jurisdiction . . . , we decline to exercise that jurisdiction." (citation omitted)). We will instead address only the appeal filed by the government.

B.    *Count Two of the Indictment Is Legally Sufficient To State an Offense.*

7

Congress passed the Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, to address a major source of money and power for organized crime—gambling. *See United States v. Harris*, 460 F.2d 1041, 1045 (5th Cir. 1972). The Act prohibits substantial and continuous illegal gambling businesses:

> (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
>
> (b) As used in this section–
>> (1) "illegal gambling business" means a gambling business which–
>>> (i) is a violation of the law of a State or political subdivision in which it is conducted;
>>> (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
>>> (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
>> . . .
>>
>> (4) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

18 U.S.C. § 1955.

The government argues that Count Two of the indictment sufficiently alleges that Racetrack Bingo is an "illegal gambling business." "An indictment is sufficient if it: '(1) presents the essential elements of the charged offense, (2)

8

notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013) (quoting *United States v. Dabbs*, 134 F.3d 1071, 1079 (11th Cir. 1998)). The district court ruled that a violation of Florida law could not convert a gambling business into an illegal gambling business, so the indictment failed to state the essential element about state law required to prove Count Two. No party argues about either of the two other elements of sufficiency, so our inquiry is limited to deciding whether the indictment presents the essential element about state law. We agree with the government that the indictment is sufficient because at least some violations of the Florida bingo statute, Fla. Stat. § 849.0931, which the indictment cites, could make Racetrack Bingo an "illegal gambling business," 18 U.S.C. § 1955.

Bingo is a form of gambling. Federal law defines the term "gambling," *id.* § 1955(b)(4), and then defers to state law to determine which gambling businesses are illegal, *id.* § 1955(b)(1)(i). States may decide what conduct is illegal, but states may not redefine "gambling." *Cf. United States v. One Single Family Residence Located at 18755 N. Bay Rd., Miami*, 13 F.3d 1493, 1497 (11th Cir. 1994) ("Section 1955 'borrows' state law only for the limited purpose of defining the

9

conduct that is prohibited as illegal gambling. Incorporation of state law for other purposes has been rejected . . . ." (emphasis omitted)). Gambling "includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein." 18 U.S.C. § 1955(b)(4). And bingo is an activity where "participants pay a sum of money for the use of . . . cards[,] . . . numbers are drawn by chance, . . . [and a] player calls out 'bingo' and is declared the winner of a predetermined prize." Fla. Stat. § 849.0931(1)(a). Selling chances in a numbers game is classically gambling, and the list of examples defining gambling is not exhaustive. The federal gambling statute also excludes bingo games conducted by a nonprofit organization, 18 U.S.C. § 1955(e), an unnecessary exception if bingo is not gambling. Because bingo is gambling, and because Racetrack Bingo is a bingo business, Racetrack Bingo is a gambling business.

The question remains whether the indictment alleges that Racetrack Bingo is an *illegal* gambling business: "a gambling business which is a violation of the law of [Florida]." *Id.* § 1955(b)(1)(i). Answering this question depends on what the meaning of the word "is" is. The federal gambling statute applies only to a gambling business that "*is* a violation of the law," 18 U.S.C. § 1955(b)(1)(i) (emphasis added), not to a gambling business that "is *in* violation of" or "*has*

10

*violated* the law." We have stated that "Section 1955 defines an illegal gambling business as one that . . . operates in violation of state law," *United States v. Miller*, 22 F.3d 1075, 1077 (11th Cir. 1994), but this dictum paraphrases the elements of the statute and is imprecise. That a business violates state law is necessary, but not sufficient, for that business to *be* illegal. As the Eighth Circuit explained, "The word 'is' strongly suggests that the government must prove more than a violation of some state law by a gambling business. *The gambling business itself* must be illegal." *United States v. Bala*, 489 F.3d 334, 340–41 (8th Cir. 2007).

The Supreme Court has held that "[t]he allowable unit of prosecution under § 1955 is defined as participation in a single 'illegal gambling business.' Congress did not . . . define discrete acts of gambling as independent federal offenses." *Sanabria v. United States*, 437 U.S. 54, 70 (1978). "[T]he essence of the crime created by Congress is participation in a 'business.'" *Id.* That the unit of prosecution is a single gambling business also suggests that the violation of state law must be about the existence and nature of the business itself, not a single illegal action.

The unit of prosecution defined by section 1955 may sometimes require difficult line-drawing. When gambling is squarely banned under state law, it is not difficult to conclude that a gambling business is illegal. In contrast, when "the core

11

gambling activity was specifically authorized by state law but the manner in which [the] defendant conducted that activity violated some aspect of state law," we must "identify those . . . violations of state law that turn a legal gambling business into an 'illegal gambling business' that is itself a violation of state law." *Bala*, 489 F.3d at 340. Because all of the statutes charged in the indictment are criminal and related to gambling, we do not have to resolve whether a gambling business might be "illegal" because it operates without official grant of authority (e.g., an "underground" Las Vegas casino that lacks a business license and never pays taxes). Nevertheless, "it may be difficult in some cases to determine when a [criminal,] gambling-related violation is sufficient to make a legal gambling business illegal for purposes of § 1955." *Id.* at 341. But "the text of the statute . . . require[s] that the line be drawn." *Id.*

This appeal does not require that we resolve every hypothetical difficulty in deciding what makes a gambling business illegal because there are at least some violations of the Florida bingo statute, Fla. Stat. § 849.0931, that may make Racetrack Bingo "illegal." The indictment alleges that Racetrack Bingo was an "illegal gambling business"; it does not allege an incidental illegal act by an otherwise legal business. The Florida bingo statute states that charitable organizations may conduct bingo games "provided the entire proceeds derived

12

from the conduct of such games, less actual business expenses . . . , are donated by such organizations." *Id.* § 849.0931(2)(a). The charitable organizations may "only be directly involved" and may not "serve as a sponsor of a bingo game . . . conducted by another." *Id.* § 849.09319(2)(b). For a non-charitable organization, "its *right* to conduct bingo games . . . is *conditioned upon* the return of all the proceeds from such games to the players in the form of prizes." *Id.* § 849.0931(3) (emphasis added). If, for example, the government can prove that Racetrack Bingo illegally allows charities to sponsor bingo games without their direct involvement or that Racetrack Bingo forfeits its right to conduct bingo by not returning all of the proceeds from those games to the players, then a jury could find that Racetrack Bingo is an illegal gambling business.

It is a harder question whether Racetrack Bingo *is* an illegal gambling business if it violates only the more detailed rules on topics such as the number of days a week an organization may conduct bingo, the location of the games, or the rental rates charged to lease property where bingo is conducted. *See id.* § 849.0931(5)–(13). But at the indictment stage, we need not decide whether every possible violation of the Florida bingo statute can support federal prosecution under the Act. The district court ruled only that a violation of the Florida bingo statute before 2013 could never convert a business into an illegal gambling

13

business, and we decide only that there are at least some violations of the bingo statute that could make Racetrack Bingo an illegal gambling business. The Masinos have not filed a motion for a bill of particulars on the ground that the indictment provided them insufficient notice. *See United States v. Davis*, 854 F.3d 1276, 1293 (explaining that "[t]he purpose of a bill of particulars is 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense'" (quoting *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985))). And the government will bear the burden to prove at trial that Racetrack Bingo is an illegal gambling business under Florida law.

As the parties acknowledge, whether a violation of the bingo statute may serve as a predicate offense for the Florida Racketeering Act is irrelevant to this appeal. In 1998, the Florida Supreme Court held that violations of the bingo statute were not punishable under the state lottery or racketeering statutes because the bingo statute had its own separate system of criminal penalties. *Dep't of Legal Affairs v. Bradenton Grp., Inc.*, 727 So. 2d 199, 202 (Fla. 1998). On remand, Florida attempted to evade this holding by using the federal gambling statute to transform a violation of the bingo statute into a racketeering violation. The Florida

14

District Court of Appeal held that this argument was barred by collateral estoppel and that, in any event, the government could not use the federal statute to circumvent the state statutes. *Brandenton Grp., Inc. v. State*, 970 So. 2d 403, 408–11 (Fla. Dist. Ct. App. 2007). In 2013, the Florida legislature amended its Racketeering Act to allow violations of the bingo statute to count as "[r]acketeering activity." *See* Fla. Stat. § 895.02(8)(a)(45). The district court reasoned that this change in the law meant that only violations of the Florida bingo statute that occurred after the amendment could constitute an illegal gambling business for purposes of the federal gambling statute. But whether a violation of the bingo statute is a predicate offense for the Florida Racketeering Act and whether a violation of the bingo statute makes an otherwise legal gambling business into an illegal gambling business for purposes of the federal gambling statute are separate questions. Violations of the bingo statute could make a business illegal regardless of whether those violations also support a state racketeering prosecution. The district court erred when it drew a distinction between bingo offenses committed before and after the amendment to the Florida Racketeering Act.

Because a violation of the Florida bingo statute could satisfy the essential element about state law required to prove Count Two, we need not address Florida

15

gambling house statutes as a basis for upholding the indictment. *See* Fla. Stat. §§ 849.01, 849.02, 849.03 (prohibiting individuals, their agents, and their lessors, from "keep[ing], exercis[ing] or maintain[ing] a gaming table or room" or "suffer[ing] or permit[ting] any person to play for money or other valuable thing at any game whatever."); *see also Brandenton*, 727 So. 2d at 201–02 (explaining that violations of the bingo statute are punishable by the bingo statute, not other gambling statutes). The bingo statute provides at least some violations that would make a gambling business illegal. As a result, the indictment stated the essential element about state law.

## IV. CONCLUSION

We **DISMISS** the cross-appeal for lack of jurisdiction. We **REVERSE** the order dismissing part of Count Two of the indictment and **REMAND** for further proceedings.

16